UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| FRANCISCO ANDRADE SALOMON,<br><br>Petitioner,<br><br>v.<br><br>MARKWAYNE MULLIN,<br>DAVID VENTURELLA,<br>SAMUEL OLSON,<br>BRISON SWEARINGEN,<br>TODD BLANCHE,<br><br>Respondents. | ) | No. 2:26-cv-00507-MPB-MG |

**ORDER GRANTING IN PART PETITION FOR WRIT OF HABEAS CORPUS**

Mr. Francisco Andrade Salomon's petition for a writ of habeas corpus seeks his release from the Clay County Jail, where he is detained at the direction of federal immigration officials. For the following reasons, the petition is granted in part.

**I. Facts**

Mr. Salomon is a Mexican citizen and national. Prior to 2020, Mr. Salomon entered and was removed from the United States multiple times. Dkt. 9-1 at 1, 12. In 2020, he was again located in the United States and ordered removed. *Id*. at 3. On September 23, 2020, however, he was granted withholding of removal to Mexico and placed on an Order of Supervision ("OSUP"). *Id*.

On July 15, 2026, U.S. Immigration and Customs Enforcement ("ICE") officers arrested Petitioner on a warrant issued pursuant to 8 U.S.C. § 1226 and took him into custody. *Id*. at 15. A deportation officer purported to cancel his OSUP pursuant to 8 C.F.R. § 241.13 on the basis that he was subject to a final order of removal and the agency was reviewing his case for removal to an alternate country. Dkt. 9-2 at 2. Mr. Salomon received notice of the revocation and was given

an informal interview but declined to provide a statement. *Id*. The government asserts that it is taking steps to remove Mr. Salomon to a third country. Dkt. 9 at 1. Mr. Salomon counters that his detention is unlawful because his OSUP was improperly revoked and the proposed third-country removal violates his rights under the Convention Against Torture

## II. Analysis

A federal court may issue a writ of habeas corpus when the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Mr. Salomon argues that his detention violates the Fifth Amendment's due process clause, the Immigration and Nationality Act ("INA"), the Administrative Procedure Act ("APA"), and the Foreign Affairs Reform and Restructuring Act ("FARRA").

### A. Legality of Detention

Because Mr. Salomon is subject to a final removal order, his detention is governed by 8 U.S.C. § 1231. The statute applies two detention schemes—one compulsory and one discretionary—to two distinct time periods.

Section 1231(a)(1) establishes a 90-day "removal period." For purposes of this case, the removal period begins when the noncitizen's removal order "becomes administratively final." 8 U.S.C. § 1231(a)(1)(B)(i). Section 1231(a)(1)(A) directs that "the Attorney General shall remove" a noncitizen who has been ordered removed during the 90-day removal period. To facilitate that removal, § 1231(a)(2)(A) directs that the Attorney General "shall detain" the noncitizen during the removal period. If the Attorney General does not remove the noncitizen within the 90-day removal period, the noncitizen "*may* be detained beyond the removal period." 8 U.S.C. § 1231(a)(6) (emphasis added).

At face value, the text of § 1231(a)(6) authorizes the government to detain noncitizens who are subject to removal orders in perpetuity. But a "statute permitting indefinite detention of an alien would raise a serious constitutional problem." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). This is because civil detention violates the Fifth Amendment unless "a special justification . . . outweighs the 'individual's constitutionally protected interest in avoiding physical restraint.'" *Id.* (quoting *Kansas v. Hendricks*, 521 U.S. 346, 356 (1997)).

The *Zadvydas* Court reconciled § 1231(a)(6) with the Fifth Amendment by interpreting § 1231(a)(6) as containing an implicit, constitutional limit on post-removal period detention authority. The statute grants the Attorney General authority to detain aliens for the express purpose of facilitating their removal. 533 U.S. at 697. Therefore, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699. Likewise, if detention "exceeds a period reasonably necessary to secure removal," then continued detention is no longer authorized by statute." *Id.* at 699–700.

To aid courts in determining when removal is reasonably foreseeable, *Zadvydas* recognized a "presumptively reasonable period of detention" of six months. *Id.* at 700–01. "After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the government must respond with evidence sufficient to rebut that showing." *Id.* at 701.

Mr. Salomon's continued detention is lawful under § 1231 as interpreted by *Zadvydas*. He has been detained for roughly three months, so his detention is well within the six-month period of presumptive reasonableness. Moreover, Mr. Salomon, if anything, argues that Respondents are moving through the third-country removal process too *quickly*, not affording him the opportunity to properly oppose his removal on the grounds that it would violate FARRA. Dkt. 1 at 18.

To the extent Mr. Salomon asserts that his detention violates the due process clause, it fails for similar reasons. Practically, a § 1231 detainee's statutory and constitutional claims merge into one because "the *Zadvydas* standard *is* due process: a § 1231 detainee who fails the *Zadvydas* test fails to prove a due process violation." *Castaneda v. Perry*, 95 F.4th 750, 760 (4th Cir. 2024); *see also Wang v. Ashcroft*, 320 F.3d 130, 146 (2d Cir. 2003) ("Because the *Zadvydas* Court set forth this 'reasonable foreseeability' test in order to prevent § 241 from violating the Due Process Clause, we may safely assume that this test articulates the outer bounds of the Government's ability to detain aliens (other than those serving criminal sentences) without jeopardizing their due process rights. Under *Zadvydas*, then, detention of an alien 'once removal is no longer reasonably foreseeable' not only violates § 241, it also violates the Due Process Clause."). In short, there is no need for a separate due process analysis.

Any contention that Mr. Salomon cannot be lawfully removed to a third country under FARRA or any other authority falls beyond the scope of this Court's review. A prisoner who seeks relief other than release from custody may have viable claims, but they may not be presented in a habeas corpus action. *Bunn v. Conley*, 309 F.3d 1002, 1007 (7th Cir. 2002). Further, under 8 U.S.C. § 1252(g), this Court may not hear claims based on decisions to "execute removal orders against any alien." *See also Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107 (2020) ("Habeas has traditionally been a means to secure release from unlawful detention, but respondent invokes the writ to achieve an entirely different end, namely, to obtain additional administrative review of his asylum claim and ultimately to obtain authorization to stay in this country."). Mr. Salomon is subject to a final removal order, and Respondents have documented that they intend to execute it.

If Mr. Salomon wishes to challenge the legality of his removal, he must do so in an immigration proceeding, not a habeas corpus case. His invocation of membership in the class set

forth in *D.V.D. v. U.S. Dep't of Homeland Sec.*, 821 F. Supp. 3d 102 (D. Mass. 2026), does not alter that conclusion. That decision is not binding on this Court. *See Trump v. J.G.G.*, 604 U.S. 670, 671–72 (2025) (reiterating that (a) any claim implying the invalidity of the claimant's custody "must be brought in habeas corpus," and (b) habeas jurisdiction lies only with the district where the claimant is confined). Moreover, this Court has already concluded that third-country removal challenges of this kind are barred by Section 1252(g). *See, e.g., Abdalla Mohamed v. Mullin, et al.*, 2:26-cv-00503-MPB-MJD (S.D. Ind. Sept. 21, 2026). Because third-country removal challenges are encompassed within a petitioner's final order of removal, they must be pursued, if at all, through the review process prescribed by 8 U.S.C. § 1252, and not through this Court's habeas jurisdiction. Accordingly, the Court lacks jurisdiction over Mr. Salomon's challenge to the Government's third-country removal policy.

**B. Revocation of OSUP**

The APA requires federal courts to "hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Respondents do not dispute Mr. Salomon's contention that the decision to detain him is an agency action subject to review under the APA.

"[T]he arbitrary and capricious standard requires an agency to do its homework; decisions that overlook relevant record evidence or lack a satisfactory answer do not pass muster." *Smith v. Garland*, 103 F.4th 1244, 1252 (7th Cir. 2024). Meanwhile, the doctrine of *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954), teaches "that federal agencies are required to follow their own regulations and some other formally adopted procedures, including those that govern exercises of an agency's discretion." *Zelaya Diaz v. Rosen*, 986 F.3d 687, 690 (7th Cir. 2021). "[I]t is incumbent upon agencies to follow their own procedures. This is so even where the

internal procedures are possibly more rigorous than otherwise would be required." *Morton v. Ruiz*, 415 U.S. 199, 235 (1974). The core of *Accardi* is that the government may not "fail[] to exercise its own discretion" when valid regulations require it to do so. 347 U.S. at 268.

Department of Homeland Security regulations codify a procedure for revoking an OSUP and redetaining an alien subject to a final removal order. *See* 8 C.F.R. §§ 241.4(*l*), 241.13(*i*). The procedure includes notice, an informal interview, and opportunities to respond to the reasons for revocation and present evidence.

Mr. Salomon argues that the government failed to observe these procedures before detaining him and failed to have an authorized official revoke his OSUP, thereby violating the APA. Respondents argue that the use of an unauthorized official to revoke the OSUP should be excused because the government has the statutory and regulatory authority to revoke Mr. Salomon's OSUP and take him into custody. Dkt. 9 at 6-7. It is evident that the government did not "do its homework" to revoke Mr. Salomon's OSUP, and it has not assembled a "satisfactory answer" for its failure to proceed according to its own rules. *Smith*, 103 F.4th at 1252. Under these circumstances, Petitioner's continued detention is arbitrary and capricious and violates the APA and *Accardi*. The question the Court now confronts is determining the proper remedy.

Mr. Salomon argues that he is entitled to immediate release. Dkt. 10 at 5 (discussing *Vicente v. Kelly*, No. 1:26-cv-00598-TWP-MG, 2026 WL 969704 (S.D. Ind. Apr. 10, 2026)). This Court, however, has consistently held that it is "prudent" to direct the government "to *immediately* afford . . . the process . . . owed in the beginning and release [Petitioner] if it cannot do so in the time provided." *Castaneda Valdivia v. Mullin*, No. 2:26-cv-00185-MPB-MG (S.D. Ind. Apr. 23, 2026). "[T]he purpose of a habeas corpus action is not to compensate the petitioner for a past injury or punish the respondent for wrongdoing; it is solely to determine whether the petitioner's *current*

detention is lawful." *Feliciano v. Warden*, No. 3:26-CV-1108-CCB-SJF, 2026 WL 2525659, at *3 (N.D. Ind. Aug. 26, 2026) (emphasis added) (citing *United States ex rel. Bilokumsky v. Tod*, 263 U.S. 149, 158 (1923). Mr. Salomon's detention is authorized by § 1231 for the reasons discussed above. To the extent his detention is unlawful, it is unlawful because the government did not abide by its procedures for revoking his OSUP—not because the government lacks authority to detain him at all.

"If men must turn square corners when they deal with the government, it cannot be too much to expect the government to turn square corners when it deals with them." *Niz-Chavez v. Garland*, 593 U.S. 155, 172 (2021). Respondents must afford Mr. Salomon the process to challenge the revocation of his OSUP. Because his detention is otherwise lawful under § 1231 and *Zadvydas*, however, the Court will not order his immediate release.[1]

## III. Conclusion

The petition for a writ of habeas corpus is **granted**. Respondents will have **through November 12, 2026**, to file documentation that (1) they have taken all necessary steps to revoke Mr. Salomon's OSUP according 8 C.F.R. §§ 241.4(*l*) and 241.13(*i*); or (2) he has been released from detention subject to the conditions of supervision previously in place under his OSUP. This order does not deprive Mr. Salomon of any right to oppose his removal through the appropriate channels or relieve the government of any obligation to hear such challenges.

The petition is otherwise **denied**.

[1] Because the Court finds that Mr. Salomon is entitled to this relief under the APA, it does not reach any argument that the government's failure to revoke his OSUP entitles him to any different relief under the due process clause. *See Thomas v. Illinois*, 697 F.3d 612, 613 (7th Cir. 2012) ("[C]onsistent with the principle of avoiding unnecessary constitutional decisionmaking, judges are to address the statutory defense before the constitutional.").

The **clerk is directed** to enter **final judgment**.

**IT IS SO ORDERED.**

Dated: November 6, 2026

Matthew P. Brookman, Judge
United States District Court
Southern District of Indiana

Distribution:

All electronically registered counsel of record